# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 23-CR-196 (RCL)** |
| **v.** | : | |
| | : | |
| **FREDERIC FIOL,** | : | |
| | : | |
| **Defendant** | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. The defendant, Frederic Fiol, has pleaded guilty to two second degree misdemeanors, a violation of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count Three) and a violation of 40 U.S.C. § 5104(e)(2)(G), (parading, demonstrating, or picketing in any Capitol building) (Count Four).

For the reasons set forth herein, the government requests that this Court sentence Fiol to 45 days of incarceration on Count Three and 36 months of probation on Count Four. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

## I.    Introduction

Defendant Frederic Fiol, a 42-year-old man from San Antonio, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer

of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

Fiol pleaded guilty to violations of disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol and parading, demonstrating, or picketing in any Capitol building. The government's recommendation is supported by: (1) Fiol's choice to enter the Capitol after having seen police use tear gas to disperse the crowd outside, and seeing rioters climbing walls to get in; (2) Fiol's travel into sensitive areas of the Capitol including Senator Jeff Merkley's private office area and the Spouses' Lounge; (3) Fiol smoked while inside the Senator's private office; and (4) after January 6 Fiol both bragged about his conduct and minimized it.

The Court must also consider that the defendant's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Fiol's crime support a sentence of 45 days of incarceration in this case.

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

## II.    Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* Doc. 26, Statement of Offense.

*Defendant Fiol's Role in the January 6, 2021 Attack on the Capitol*

On December 29, 2020, Fiol sent a Facebook message stating, "Gearing up to go help save western civilization as we know it." That message was accompanied by the following photos, which depict images of menus from the Amazon shopping app with pictures of attire and equipment:



*Images 1 and 2, Amazon menus of items Fiol would use to "save western civilization."*

On January 5, 2021, Fiol travelled to Washington D.C. by airplane from San Antonio, Texas, with his high school friend and work supervisor Matthew Mazzocco.[2] After flying to Washington D.C., the two men stayed at a Hilton Hotel on the night of January 5, 2021.

On the morning of January 6, Fiol and Mazzocco traveled to the U.S. Capitol, first arriving on the building's east side. When they arrived, President Trump was still speaking at the rally at the Washington Monument—a significant fact showing that Fiol chose on his own to go to the Capitol and was not motivated by anything he heard at the former President's rally. As a large crowd started gathering at the Capitol, Fiol and Mazzocco walked around to the northwest side.

They spent about 30 minutes in that area before walking back to the east side of the Capitol. The men then walked back to the northwest side of the Capitol building along the upper steps and down to the southwest side of the building.

Before he entered the Capitol, Fiol captured multiple videos on his cellphone, including several videos of police deploying tear gas against the crowd (*see* Sentencing Exhibit 1 and Image 3, below) and videos of the mob climbing walls to get closer to the Capitol (*see* Image 4, below).

---

[2] Mazzocco has been charged and pled guilty in connection with his participation in the January 6 Capitol Riot. *See generally United States v. Mazzocco*, 21-CR-54 (TSC). Mazzocco received a sentence of 45 days of incarceration and 60 hours of community service from Judge Chutkan (which was above the government's recommendation in that case).



*Image 3, a screenshot at 0:08 from Sentencing Exhibit 1, a video Fiol took of police deploying teargas against the crowd.*



*Image 4, a screen capture from a video Fiol took of the mob as they ascended the walls around the Capitol building.*

At approximately 3:10 p.m. Fiol, followed closely by Mazzocco, entered the Capitol, walking past broken glass, through the Senate Wing Door, and into the building while a blaring alarm sounded. (*See* Sentencing Exhibit 2, as well as Images 5 and 6, below). Fiol wore a red

"Make America Great Again" ballcap over a fur hat, along with a white face covering while he held his cellphone aloft to capture video.



*Image 5, a screen capture from CCTV showing Fiol (circled in yellow) and Mazzocco (circled in red) as they enter the Capitol.*



*Image 6, a screenshot at 0:30 from Sentencing Exhibit 2, a video Fiol took as he entered the Capitol through the Senate Wing Door as a blaring alarm sounded. The doors' shattered glass can be seen in the upper left corner of the image.*

After he entered, Fiol walked into Senator Merkley's private office, where he stayed for several minutes. While inside the office, another individual handed Fiol a hand-rolled cigarette

containing an unknown substance. Fiol took a video on his cellphone of himself taking two puffs from the hand-rolled cigarette and then passing it to another person. (*See* Sentencing Exhibit 3 and Image 7, below).



*Image 7, a screenshot at 0:01 from Sentencing Exhibit 3, a video Fiol took of himself as he smoked inside Senator Merkley's private office.*

Fiol also went into another private area of the Capitol called the Spouse's Lounge, where open-source video captured him taking video on his cellphone. (*See* Sentencing Exhibit 4 and Image 8, below).



*Image 8, a screenshot at 0:13 from Sentencing Exhibit 4, an open-source video depicting Fiol (circled in yellow) inside the Spouse's Lounge.*

Later, Fiol and Mazzocco walked down a hallway, through the Crypt, and into other areas of the first floor. The men returned to the Senate Wing Door area and departed the Capitol through the door approximately 25 minutes after they entered.

*Social Media Messages After January 6*

In the days after January 6, Fiol used social media to both brag about his involvement in the events of that day, and to minimize his conduct.

Shortly after leaving the Capitol, on the evening of January 6, Fiol sent videos to a Facebook friend that he took inside the Capitol, including footage taken inside the Senator's private office. The images below depict screen captures from those recordings that Fiol sent. (*See* Sentencing Exhibit 5, as well as Images 9 and 10, below.)



*Image 9, a screenshot at 0:02 from Sentencing Exhibit 5, a video Fiol captured inside the Capitol that he later sent on Facebook.*



*Image 10, a screenshot at 0:23 from Sentencing Exhibit 5, a video Fiol captured inside Senator Merkley's private office that he later sent on Facebook.*

On January 7, 2021, Fiol sent a message to a Facebook friend that falsely claimed, "Dc cops were escorting buses with antifa fucks in them to the capitol 30 minutes before curfew." To the same user, Fiol bragged in another message later on the same day, "I made history." Fiol also later told the same Facebook friend that, "It was peaceful when I was there, they let people walk in and took selfies with cops. That shit happened hours before I got there."

Also on January 7, a different Facebook friend sent Fiol a message saying, "Fred don't tell me you was running inside the capital today lmao." Minimizing his actions, Fiol replied, "Don't believe the media, it was 99% peaceful."

*The Charges and Plea Agreement*

On June 9, 2023, the United States charged Fiol by a 4-count Information with violating: 18 U.S.C. § 1752(a)(1) (entering and remaining in a restricted building or grounds) (Count One); 18 U.S.C. § 1752(a)(2) (disorderly and disruptive conduct in a restricted building or grounds) (Count Two); 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count Three); and a violation of 40 U.S.C. § 5104(e)(2)(G), (parading, demonstrating, or picketing in any Capitol building) (Count Four). On November 15, 2023, pursuant to a plea agreement, Fiol pleaded guilty to Count Three, disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol in violation of 40 U.S.C. § 5104(e)(2)(D), and Count Four, parading, demonstrating, or picketing in any Capitol building in violation of 40 U.S.C. § 5104(e)(2)(G). By plea agreement, Defendant agreed to pay $500 in restitution to the Architect of the Capitol.

## III.    Statutory Penalties

Fiol now faces a sentencing for violating 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count Three) and 40 U.S.C. § 5104(e)(2)(G), (parading, demonstrating, or picketing in any Capitol building) (Count Four). As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000 on each Count. The defendant must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United*

*States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As these offenses are Class B Misdemeanors, the Sentencing Guidelines do not apply. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

## IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of a sentence of 45 days of incarceration.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Fiol's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Fiol, the absence of violent or destructive acts is not a mitigating factor. Had Fiol engaged in such conduct, he would have faced additional criminal charges.

One of the most important factors in Fiol's case is the fact that he entered after seeing rioters scale the walls outside the Capitol and police use tear gas on the mob. Once inside, he saw broken glass and people smoking, but still refused to leave. Instead, he traveled into sensitive areas of the Capitol, including Senator Merkley's private office and the Spouses' Lounge. Although all the rioters present inside the Capitol on January 6 were disruptive, Fiol's intrusion into the private office space of a sitting member of Congress and a lounge meant for spouses is notable as a particularly invasive aspect of his actions on January 6.

11

Fiol's smoking while inside the Senator's office further illustrates his pointed lack of respect for the building, the institution it represents, and for the vote-certification process Fiol and his fellow rioters disrupted.

Fiol's use of social media following January 6 also militates in favor of a harsher penalty. Not only did he brag about his actions on January 6 by sending videos of what he did and claiming to have "made history," he also minimized his conduct by claiming the events of the day were "99% peaceful." Worse yet, he made up lies in order to blame the very police officers who sacrificed so much to try to defend the building when he said, "Dc cops were escorting buses with antifa fucks in them to the capitol 30 minutes before curfew," and "they let people walk in and took selfies with cops."

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration in this matter.

### B. Fiol's History and Characteristics

As set forth in the PSR, Fiol's criminal history consists of an arrest (for which he was not convicted) for possession of marijuana less than 5 pounds and greater than four ounces, and ten traffic infractions, most for not having insurance. ECF 27 ¶ 30.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on

our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

 The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a term of incarceration.

First, although Fiol accepted responsibility by pleading guilty, his statement to the Probation officer who conducted his PSR interview expressed no remorse. While Fiol did acknowledge that he engaged in the elements of the crimes he is charged with, he attempted to lay

blame for his actions at the feet of his companion, Mazzocco. He said Mazzocco traveled with him, employed him, directed his work activities, and asked him to social events. Fiol did not acknowledge the damage done to the Capitol, the effect of the riot on the Capitol Police Officers who tried to guard the building that day, or the riot's effect on the democratic process.

Fiol's social media postings following January 6 also are troubling. He bragged about the actions he took that day, sending videos to friends and claiming to have "made history." He also minimized his roll in the riot, saying that the day was "99% peaceful." The Court must sentence Fiol in a manner sufficient to deter him specifically, and others generally, from going down that road again.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[3] This Court must sentence Fiol based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Fiol has pleaded guilty to Counts Three and Four of the Information, charging him with disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol in violation of 40 U.S.C. § 5104(e)(2)(D) and parading, demonstrating, or picketing in any Capitol building in violation of 40 U.S.C. § 5104(e)(2)(G). These offenses are Class B misdemeanors. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18

---

[3] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Anthony Mazzio*, 22-CR-214 (RCL), the Court sentenced the defendant to two months' imprisonment. In that case, Mazzio also saw signs he shouldn't enter the Capitol (including tear gas and rubber bullets), yet came inside anyway, as did Fiol. Also like Fiol, Mazzio entered the building through the Senate Wing Door and went into a sensitive area of the Capitol, in his case Speaker Pelosi's office. Mazzio expressed a complete lack of remorse following January 6, which accounts for the discrepancy in his sentence compared to the recommendation here.

The Court should also consider the case of Fiol's companion, Matthew Mazzocco. In *United States v. Matthew Mazzocco*, 21-CR-54 (TSC), Judge Chutkan sentenced Mazzocco to 45 days of incarceration and 60 hours of community service. Mazzocco traveled nearly the exact same route as Fiol, entering and exiting at the same time, and also travelling in the Spouse's Lounge and the Senator's office. While inside, Mazzocco warned others not to take or destroy anything and said that they were probably going to get in trouble for what they were doing—unlike Fiol, who was smoking in a Senator's office. Notably, Fiol entered the Capitol first, with Mazzocco

15

following behind; not the other way around. Fiol's behavior was worse than Mazzocco's and it amply justifies a 45-day-plus-probation recommendation here, where Mazzocco received only the 45 days of incarceration. Mazzocco was also aware of the crowd outside the Capitol and entered through the Senate Wing Door thereafter. And although Fiol has described Mazzocco as his "work supervisor" (*see* PSR ¶ 21), Fiol's actions on January 6 were arguably worse.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.      Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[4] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Fiol must pay $500 in restitution, which reflects in part the role he played in the riot on January 6.[5] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* (As noted above in footnote 1, the amount of damages has since been updated by

---

[4] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C.  § 3663A(c)(1).

[5] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

the Architect of the Capitol, USCP, and MPD.) Fiol's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 11.

## VI.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence the Defendant to 45 days of incarceration on Count Three and 36 months of probation on Count Four. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Fiol's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    */s/ Eric Boylan*
Eric Boylan
Texas Bar No. 24105519
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
Tel: (202) 815-8608
Email: eric.boylan@usdoj.gov